UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>GARAGE PLUS STORAGE AVIATION, LLC, a Washington LLC; DANNY SIMON, an individual; MARLENE PERDUE, individually, and as Personal Representative of the Estate of JEREMY SIMON; MOUNTAIN CREST HOMES LLC, a Washington LLC; ALAN E. RAINWATER, individually and as Personal Representative for the Estate of SUSAN M. RAINWATER, and LEAH MARIE MILLER, an individual,<br><br>Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

## I. INTRODUCTION

In this action, Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") (together, "Ohio") seek declaratory relief regarding their obligations with respect to a pending state court action, Alan Rainwater v. Marlene Perdue, et al, Washington State Superior Court, Pierce County, Case No. 18-2-12960-1 (the "Underlying Action").

## II.  PARTIES

1. Plaintiff Ohio Security Insurance Company ("Ohio Security") is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley St., Boston, Massachusetts 02116.

2. Plaintiff The Ohio Casualty Insurance Company ("Ohio Casualty") is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

3. Defendant Garage Plus Storage Aviation LLC ("Garage Plus") is a Washington limited liability company whose managing member, Danny Simon, resides and is domiciled in the State of Washington.

4. Defendant Danny Simon is an individual residing and domiciled in the State of Washington.

5. Defendant Marlene Perdue is named in this suit in both her individual capacity and in her capacity as personal representative for the Estate of Jeremy Simon.  Marlene Perdue is an individual residing and domiciled in the State of Washington.  At the time of his death, Jeremy Simon was a resident and domiciliary of the State of Washington.

6. Defendant Mountain Crest Homes LLC ("Mountain Crest") is a Washington limited liability company whose managing member, Danny Simon, resides and is domiciled in the State of Washington.

7. Defendant Alan Rainwater is named in this suit both in his individual capacity and in his capacity as personal representative for the Estate of Susan M. Rainwater.  Alan Rainwater is an individual residing and domiciled in the State of Washington.  At the time of her death, Susan M. Rainwater was a resident and domiciliary of the State of Washington.

8. Defendant Leah Marie Miller is an individual residing and domiciled in the State of Washington.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the plaintiffs are citizens of different states than all defendants.

10. Venue is proper pursuant to 28 U.S.C. § 1339(b)(1) and (2) because all defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## IV. FACTS

**A.     The Ohio Policies**

11. Ohio Security and Ohio Casualty issued policies of insurance to Defendant Garage Plus.

12. Ohio Security issued commercial package policy no. BKS (19) 57 19 65 41 to Garage Plus for the policy period from March 10, 2018 to March 10, 2019 (the "Ohio Security Policy"), a copy of which is attached as Exhibit "A".

13. The Ohio Security Policy contains Commercial General Liability Coverage Form No. CG 00 01 04 13, which—subject to various terms, conditions, exclusions, and limitations—affords liability coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The Commercial General Liability Form further states that Ohio Security has the "right and duty to defend the insured against any 'suit' seeking those damage" but that Ohio Security has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury or 'property damage' to which this insurance does not apply."

14. Among other exclusions, the Ohio Security Policy contains exclusion 2.g, which, in relevant part, states that "[t]his insurance does not apply to … '[b]odily injury' … arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured."

15. The Ohio Security Policy is subject to a liability limit of $1,000,000 each occurrence.

16. Ohio Casualty issued Excess Liability Policy No. ESO (19) 57 19 65 41 to Garage Plus for the policy period from March 10, 2018 to March 10, 2019 (the "Ohio Casualty Policy"), a copy of which is attached as Exhibit "B".

17. The Ohio Casualty Policy States that "Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the 'first underlying insurance.'"

18. The Ohio Security Policy is identified on the declarations page of the Ohio Casualty Policy as the "First Underlying Insurance."

19. The Ohio Casualty Policy is subject to a liability limit of $2,000,000 each occurrence.

**B.    The Underlying Action**

20. This declaratory judgment action involves a dispute as to liability insurance coverage for an underlying wrongful death action pending in Washington State Superior Court. On August 9, 2018, Susan Rainwater was riding her bicycle northbound on State Route 7 near 320th Street in Eatonville, Washington when she was struck by a 1986 Chevrolet K-10 pick-up truck bearing license plate number C93973A driven by Jeremy Simon. Mrs. Rainwater died at the scene.

21. On November 13, 2018, Defendant Alan Rainwater, Susan Rainwater's husband and personal representative of her estate, filed suit against Jeremy Simon and his father, Defendant Danny Simon, in the Underlying Action. Susan Rainwater's daughter, Defendant Leah Marie Miller, intervened in the Underlying Action. Alan Rainwater subsequently added Defendants Marlene Perdue and Mountain Crest by way of First and Third Amended Complaints respectively and later added Defendant Garage Plus in a Fourth Amended Complaint filed on April 6, 2021. A copy of the operative Fourth Amended Complaint is

attached as Exhibit "C".

22. In the Fourth Amended Complaint (hereinafter referred to as the "Complaint"), Alan Rainwater alleges that the negligence of Jeremy's Parents, Danny Simon and Marlene Perdue, and two companies owned by Danny Simon, Mountain Crest and Garage Plus, caused or contributed to the August 9, 2018 accident.

23. Jeremy's father, Danny Simon, was the legal and registered owner of the Chevrolet K-10 pick-up Jeremy was driving on August 9, 2018.

24. According to the Complaint, Jeremy was residing with his mother and working for his father at the time of the accident.

25. The Complaint alleges that Jeremy had confided in Danny prior to the accident that he was struggling with drug problems and needed treatment. Consequently, Danny allegedly parked the vehicle on Perdue's property, gave her the keys to the vehicle, and told Perdue that Jeremy was not permitted to drive it until he completed drug treatment. Notwithstanding their alleged knowledge of Jeremy's drug problems, the Complaint alleges that Danny and Perdue failed to prevent Jeremy from using the vehicle.

26. The Complaint alleges that Danny owned and operated Defendants Mountain Crest, a land development company, and Garage Plus, a company that owned the land, airplane hangars, a job shack, and office for the Mountain Crest job site in Eatonville, Washington.

27. The night before the accident, Jeremy had allegedly been working at the Mountain Crest and Garage Plus job site until 1:00 a.m. and did not get to sleep until 3:00 a.m.

28. After only three hours of sleep, the Complaint alleges that Jeremy got into the 1986 Chevrolet K-10 pick-up and began driving from Eatonville to Lakewood, Washington to pick up Michael Wager, an architect hired by Mountain Crest for its land development project.

29. While traveling northbound on State Route 7, Jeremy allegedly fell asleep and veered off the roadway at mile post 38.10 near 320th Street East into the shoulder lane designated for bicycle traffic. Jeremy struck Ms. Rainwater with the Chevrolet K-10 pick-up,

catapulting her into a northbound ditch. The Complaint alleges that Jeremy left the scene without rendering aid and without calling 911.

30. The Fourth Amended Complaint alleges six causes of action: (1) negligence and wrongful death against Marlene Perdue as personal representative of the Estate of Jeremy Simon; (2) vicarious liability against Danny Simon and Marlene Perdue under the family car doctrine; (3) negligent entrustment against Defendant Danny Simon, Marlene Perdue, Mountain Crest, and Garage Plus; (4) negligent infliction of emotional distress; (5) agency against Mountain Crest; and (6) agency against Garage Plus.

31. Specifically, the Complaint alleges that Danny Simon, Marlene Perdue, Mountain Crest, and Garage Plus breached their duties of care to Mrs. Rainwater by allowing Jeremy to use the Chevrolet K-10 pick-up despite his known drug problems.

32. The Complaint further alleges that Jeremy was acting within the scope of his employment at Mountain Crest and Garage Plus at the time of the accident and that, as a result, Mountain Crest and Garage Plus are vicariously liable for Jeremy's negligence.

**C.     The Insurance Claim**

33. On February 22, 2021, Ohio received a letter from Alan Rainwater's attorneys demanding the limits of the Ohio Security and Ohio Casualty Policies in exchange for a release of "the Mountain Crest Corporation." The letter did not mention Garage Plus.

34. Ohio promptly informed Mr. Rainwater's attorneys on February 26, 2021 that they had not insured Mountain Crest under any policy that might apply to the Underlying Action and that they were respectfully declining the demand as to Mountain Crest, but that they would investigate and consider the demand under the Ohio Security Policy and Ohio Casualty Policy (together, the "Policies") issued to Garage Plus.

35. On March 17, 2021, Ohio promptly informed Garage Plus that the Policies did not afford coverage for the allegations in the demand letter because, due to exclusion 2.g, the policy does not apply to bodily injury arising out of the ownership, maintenance, use or

entrustment to others of any "auto."  Ohio also informed Garage Plus that no "suit" had been filed against Garage Plus and requested that Garage Plus forward any "suit" that may be filed against it.  A copy of the March 17, 2021 letter from Ohio to Garage Plus is attached as Exhibit "D".

36. Ohio also promptly informed Mr. Rainwater's attorneys that it was declining the demand.  A copy of Ohio's letter to Mr. Rainwater's attorneys is attached as Exhibit "E".

37. On March 17, 2021, Alan Rainwater filed a motion for leave to file the Fourth Amended Complaint to add Garage Plus as a defendant in the Underlying Action.

38. On March 31, 2021, Danny and Garage Plus tendered the Fourth Amended Complaint to Ohio Security for defense and indemnity coverage.

39. Ohio promptly investigated and considered the allegations in the Fourth Amended Complaint and on April 6, 2021 informed Garage Plus that the Policies did not afford coverage because the injuries alleged in the Complaint arose out of the "ownership, maintenance, use or entrustment to others" of an "auto" within the meaning of Exclusion 2.g.  A copy of Ohio's April 6, 2021 letter to Garage Plus is attached as Exhibit "F".

40. On or about July 27, 2021, Alan Rainwater, individually and in his capacity as personal representative of the Estate of Susan M. Rainwater, and Leah Marie Miller (together the "Underlying Plaintiffs") entered into a Settlement Agreement, Assignment of Rights, Covenant Not to Execute, and Covenant Judgment (the "Covenant Judgment") with Defendants Mountain Crest and Garage Plus in which Mountain Crest and Garage Plus stipulated to the entry of a judgment against them in the amount of $12,000,000 and assigned all their rights under the Policies to the Underlying Plaintiffs in an exchange for an agreement by the Underlying Plaintiffs to seek satisfaction of the Covenant Judgment solely from Ohio and Mountain Crest's insurer.  A copy of the Covenant Judgment is attached as Exhibit "G".

## V. **COUNT I**

**Declaratory Judgment – Ohio Security Policy**

41. Ohio incorporates by reference all allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42. The Ohio Security Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

43. An actual and justiciable controversy exists between Ohio and the Defendants regarding coverage under the Ohio Security Policy.

44. Pursuant to the express terms, conditions, exclusions, and limitations of the Ohio Security Policy, there is no liability coverage available for the claims and damages alleged in the Underlying Action.

45. The Insuring Agreement of Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability of the Ohio Security Policy provides, in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

46. Under Section II – Who Is An Insured, the Ohio Security Policy provides, in part, as follows:

> **1.** If you are designated in the Declarations as: …
>
>     **c**. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as managers.
>
> …
>
> **2.** Each of the following is also an insured
>
>     **a**. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than … your managers (if you are a limited liability company) but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

47. The Ohio Security Policy defines "volunteer worker" as follows:

> **20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

48. The word "you" and "your" as used in the Ohio Security Policy refers to the named insured shown in the Declarations and any other person or organization qualifying as a Named Insured Under this Policy.

49. Garage Plus is the only person or entity qualifying as a Named Insured under the Ohio Security Policy. Mountain Crest is not an insured under the Policy.

50. As a member of Garage Plus, Danny Simon qualifies as an insured with respect to the conduct of Garage Plus's business. As a manager of Garage Plus, Danny Simon qualifies as an insured with respect to his duties as a manager. To the extent Danny Simon qualifies as an "employee" of Garage Plus but not a manager, he is an insured only for acts within the scope of his employment by Garage Plus or while performing duties related to the conduct of Garage Plus's business.

51. To the extent the Underlying Action seeks to impose liability for conduct of Danny Simon that is not within the categories described above, such claims and damages do not come within the insuring agreement of the Ohio Security Policy.

52. To the extent the Underlying Action seeks to impose liability upon Garage Plus for actions of Danny and/or Jeremy Simon in their capacities as managers, members, employees, or volunteer workers of Mountain Crest, such claims and damages do not trigger the insuring agreement of the Ohio Security Policy.

53. Exclusion 2.g of the Ohio Security Policy provides, in relevant part, as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> …

      **g. Aircraft, Auto Or Watercraft**

      "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

      This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

54.    The Ohio Security Policy defines "auto", in relevant part, as follows:

    **2.** "Auto" means:

      **a**. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

      **b**. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

55.    The Chevrolet K-10 pick-up qualifies as an "auto" within the meaning of the Ohio Security Policy.

56.    To the extent the claims and damages alleged in the Underlying Action come within the insuring agreement of the Ohio Security Policy, Exclusion 2.g applies to preclude coverage.

57.    Exclusion 2.g bars coverage for "'bodily injury' … arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' owned or operated by or rented or loaned to any insured."  To the extent Danny Simon qualifies as an insured under the Ohio Security Policy who owned the Chevrolet K-10 pick-up, the vehicle was owned by an insured such that Exclusion 2.g applies to preclude coverage.

58. To the extent Jeremy Simon was an "employee" of Garage Plus acting in the scope of such employment or performing duties related to the conduct of Garage Plus's business or qualified as an unpaid "volunteer worker" at the time of the accident, he qualified as an insured. In such case, the vehicle was being operated by an insured such that Exclusion 2.g applies to preclude coverage.

59. For these reasons, there is no coverage available under the Ohio Security Policy for the claims and damages alleged in the Underlying Action, and Ohio Security has no duty to provide defense or indemnity coverage in the Underlying Action.

## VI. COUNT II

### Declaratory Judgment – Ohio Casualty Policy

60. Ohio incorporates by reference all allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. The Ohio Casualty Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

62. An actual and justiciable controversy exists between Ohio and the Defendants regarding coverage under the Ohio Casualty Policy.

63. Pursuant to the express terms, conditions, exclusions, and limitations of the Ohio Casualty Policy, there is no liability coverage available for the claims and damages alleged in the Underlying Action.

64. The insuring agreement of the Ohio Casualty Policy provides as follows:

**I. COVERAGE**

> We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance**. Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

65. The "Underlying Limits of Insurance" shown in the declarations are the limits of the Ohio Security Policy.

66. Since the limits of the Ohio Security Policy have not been exhausted, the insuring agreement of the Ohio Casualty Policy is not triggered.

67. Ohio Security Policy is identified as the first underlying insurance under the Ohio Casualty Policy.

68. Since coverage under the Ohio Casualty follows the coverage afforded by the Ohio Security Policy and the Ohio Security Policy does not afford coverage for the claims and damages alleged in the Underlying Action, there is no coverage available under the Ohio Casualty Policy for the claims and damages alleged in the Underlying Action.

69. Accordingly, Ohio Casualty has no duty to provide defense or indemnity coverage in the Underlying Action.

## VII. RESERVATION OF RIGHTS

70. Ohio incorporates by reference all allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71. Ohio hereby incorporates by reference all terms of the Policies and reserves the right to rely upon or allege any term, condition, exclusion, or limitation in the Policies that may be relevant to this matter or to assert any rights available to it under the applicable law.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Ohio prays for judgment in its favor and against Defendants as follows:

A. Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio has no duty to provide defense or indemnity coverage in the Underlying Action; and

B. Such other and further relief as the Court deems just and appropriate.

DATED: August 12, 2021

BULLIVANT HOUSER BAILEY PC


By /s/ Michael A. Guadagno
Michael A. Guadagno, WSBA #34633
E-mail: michael.guadagno@bullivant.com


By /s/ Jared F. Kiess
Jared F. Kiess, WSBA #54532
E-mail: jared.kiess@bullivant.com

Attorneys for Plaintiffs Ohio Security Insurance Company and the Ohio Casualty Insurance Company

4825-1523-3782.1