THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OHIO SECURITY INSURANCE
COMPANY and THE OHIO CASUALTY
INSURANCE COMPANY,

               Plaintiffs,

     v.

GARAGE PLUS STORAGE AVIATION,
LLC, a Washington LLC; DANNY SIMON,
an individual; MARLENE PERDUE,
individually, and as Personal Representative
of the Estate of JEREMY SIMON;
MOUNTAIN CREST HOMES LLC, a
Washington LLC; ALAN E. RAINWATER,
individually and as Personal Representative
for the Estate of SUSAN M. RAINWATER,
and LEAH MARIE MILLER, an individual,

               Defendants.

No.: No.: 3:21-cv-05579-BHS

PLAINTIFF' S MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTION CALENDAR:
November 12, 2021

ORAL ARGUMENT REQUESTED

Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty
Insurance Company ("Ohio Casualty") (together, "Ohio") submit this Motion for Summary
Judgment.

## I.  **INTRODUCTION**

This declaratory judgment action involves a dispute as to liability insurance coverage
for an underlying state court lawsuit, *Alan Rainwater, et al. v. Marlene Perdue, et al.*,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS
PAGE 1
**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Washington State Superior Court, Pierce County Case No. 18-2-12960-1 (the "Underlying Action").  In the Underlying Action, Alan E. Rainwater and Leah Marie Miller, defendants in this declaratory judgment action, sought damages arising out of an automobile-versus-bicyclist accident that resulted in the death of Susan M. Rainwater.  Ms. Rainwater was riding her bicycle along State Route 7 near Eatonville, Washington in the morning hours of August 9, 2018 when a Chevrolet K-10 pickup driven by Jeremy Simon struck and killed her.  In the Underlying Action, Alan Rainwater, Susan's husband and personal representative of her Estate, alleged that the pickup was owned by Jeremy's father, Danny Simon, and that Jeremy was acting within the scope of his employment with Danny's business, Defendant Garage Plus Storage Aviation, LLC ("Garage Plus"), at the time of the accident.  Ohio insured Garage Plus, but only under a commercial general liability policy that expressly excludes auto coverage. Ohio did not issue an auto policy to any of the parties alleged to be involved in the August 9, 2018 accident.

Because of this, Ohio properly and reasonably declined to defend Garage Plus and correctly denied a $3 million settlement demand submitted to it by Mr. Rainwater's attorneys. The policy's auto exclusion is clear and unambiguous: it broadly excludes coverage for "'[b]odily injury … arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured."  The facts and theories of liability alleged in the Underlying Action fall squarely within the plain language of this exclusion.  In addition to an ordinary negligence claim against Jeremy, the operative Fourth Amended Complaint in the Underlying Action alleged liability against Danny and Garage Plus under theories of negligent entrustment, the family car doctrine, and respondeat superior.  Liability under negligent entrustment and the family car doctrine can arise only on the basis that one has "entrusted" the vehicle to another.  And liability under the agency theory of respondeat superior can occur only where the agent's—in this case, Jeremy's—"use" of a vehicle is deemed to be that of the principal—here, Garage Plus.  Since the policy plainly

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 2

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

excludes coverage for injury arising out of the "use" or "entrustment to others" of any vehicle owned or operated by an insured, Ohio had no duty to defend Jeremy, Danny, or Garage Plus in the Underlying Action.

Although Ohio anticipates Mr. Rainwater and Ms. Miller (together referred to simply as the "Estate" in this motion) will present arguments to the contrary, any such arguments are meritless and should be rejected.  To resolve the claims alleged in the Underlying Action, Garage Plus agreed to the entry of a $12 million judgment against it, subject to the condition that the Estate would only attempt to execute that judgment against its insurer, Ohio.  To seek recovery on that judgment, the Estate may argue either that the pickup was not "owned or operated by or rented or loaned to any insured" or that the Underlying Action asserted claims against Danny or Jeremy in their individual capacities and not in any capacity that would give rise to insured status under the Garage Plus Policy.  Both arguments fail, because the policy only affords coverage in the first instance, and irrespective of any exclusions, for liability of "the insured."  Therefore, to the extent Danny and/or Jeremy were acting in their capacity as employees, members, or managers of Garage Plus, the accident clearly arose out of the use or entrustment to others of an auto "owned or operated" by an insured.  And to the extent Danny and/or Jeremy were not acting in an insured capacity, the policy simply does not apply at all.

In short, the auto exclusion makes clear that what Ohio issued to Garage Plus was *not* an auto policy, but a commercial general liability policy designed to insure against risks other than those at issue in the Underlying Action.  Ohio therefore respectfully requests that the Court grant summary judgment in Ohio's favor and enter an order pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201(a), declaring that Ohio had no duty to defend or indemnify defendants Garage Plus, Danny Simon, or Jeremy Simon in the Underlying Action.

//

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 3

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

## II.  FACTUAL BACKGROUND

**1.     The Underlying Action**

On August 9, 2018, Susan M. Rainwater was riding her bicycle northbound on State Route 7 near 320th Street in Eatonville, Washington when she was struck by a 1986 Chevrolet K-10 pickup truck driven by Jeremy Simon. (Dkt. 1, ¶ 20).  Mrs. Rainwater died of her injuries at the scene.  (Dkt. 1, ¶ 20).  On November 13, 2018, Alan Rainwater, Susan Rainwater's husband and personal representative of her estate, filed suit, originally only against Jeremy Simon ("Jeremy") and his father, Danny Simon ("Danny").  (Kiess Decl., Ex. A).  Shortly thereafter, Ms. Rainwater's daughter, Defendant Leah Marie Miller, intervened as a plaintiff, and Mr. Rainwater filed a First Amended Complaint adding Jeremy's mother, Marlene Perdue, as a defendant in the case.  (Kiess Decl., Exs. B & C).

In the First Amended Complaint, Rainwater and Miller (together, the "Estate") alleged both that Jeremy negligently operated the vehicle and also that Danny and Perdue bore responsibility for the accident by allowing Jeremy to drive.  (Kiess Decl., Ex. C at ¶¶ 3.17, 6.16).  Jeremy's father, Danny, owned the Chevrolet K-10 pickup and insured it under a personal auto policy issued by Progressive.  (Kiess Decl., Ex. C at ¶ 5.2; Ex. D at 36).  And Jeremy allegedly resided with his mother, Ms. Perdue.[1]  (Kiess Decl., Ex. C at ¶ 3.17).  Sometime prior to the accident, Jeremy had allegedly disclosed his drug problem to Danny, prompting Danny to park the pickup on Perdue's property and confiscate the keys.  (Kiess Decl., Ex. C at ¶ 3.17).  Despite thus knowing that Jeremy should not be permitted to drive, the Estate claimed that Danny and Perdue failed to prevent Jeremy from accessing the pickup, facilitating his decision to drive while under the influence.  (Kiess Decl., Ex C, ¶¶ 3.16-3.17, 6.14).

---

[1] The complaints are inconsistent as to where Jeremy resided.  In two places they allege he lived with his mother.  (*See* Dkt. 1-3, ¶¶ 3.17, 6.7).  In a third, they allege that Jeremy resided on property owned by Danny.  (Dkt. 1-3, ¶ 3.2).  These inconsistencies are not relevant to Ohio's motion.

### 2.      The Garage Plus Commercial General Liability Policies

Ohio issued commercial package and excess policies to Defendant Garage Plus, one of two limited liability companies allegedly owned and operated by Danny Simon.  (*See* Swett Decl., ¶ 3; Dkt. 1-3 (the "Fourth Amended Complaint" or "FAC"), ¶¶ 1.5, 1.6).  Garage Plus operated a storage facility in Spanaway, Washington that allowed customers to conduct repair and light manufacturing on the premises.  (Kiess Decl., Ex. E at 9-10).  Garage Plus also owned airplane hangars and real property used by Danny's other limited liability company, Mountain Crest Homes, LLC ("Mountain Crest"), for its land development project.  (Swett Decl., Ex. D at 63-64; FAC, ¶ 3.18).  By all accounts, Garage Plus did not own any autos or other vehicles.  (*See* Kiess Decl., Ex. D at 43-44[2]; Swett Decl., Exs G & H[3]).

Ohio Security issued commercial package policy number BKS(19)57196541 to Garage Plus (the "Ohio Security Policy").  (Dkt. 1-1).  The Ohio Security Policy contains Commercial General Liability Coverage Form CG 00 01 04 13, which generally affords liability coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' … caused by an 'occurrence.'"  (Dkt. 1-1, Policy Form CG00010413 at 1).  This coverage is subject to various exclusions, however, one of which is Exclusion 2.g., which bars coverage for any injury arising out of the ownership, use, or entrustment to others of any "auto."  (Dkt. 1-1, Policy Form CG00010413 at 4).  Specifically, the exclusion provides:

---

[2] In his deposition, Danny Simon testified that he owned the Chevrolet K-10 Pickup and insured it through a separate insurer and that *Mountain Crest* owned a different pickup.  Danny did not identify any vehicles owned by Garage Plus.

[3] In its applications for insurance, Garage Plus was asked to identify all vehicles owned or leased by by Garage Plus as well as any non-owned vehicles used by Garage Plus.  It identified none.  *See* Swett Decl., Ex. H at "Umbrella / Excess Section" Page 2.  Garage Plus also did not complete the business auto portion of the applications or identify any prior auto carriers for Garage Plus.  *See* Swett Decl., Exs. G & H.

**2. Exclusions**

This insurance does not apply to:

…

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(Dkt. 1-1, Policy Form CG00010413 at 4).  "Auto" means "[a] land motor vehicle … designed for travel on public roads…."  (Dkt. 1-1, Policy Form CG00010413 at 14).

In addition to the named insured, the Policy also extends insured status to other persons acting in certain capacity with respect to the named insured.   (Dkt. 1-1, Policy Form CG00010413 at 10).  For a limited liability company like Garage Plus, the Ohio Security Policy provides:

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**c.** A limited liability company, you[4] are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

---

[4] The Policies make clear that, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured…."  (Dkt. 1-1, Policy Form CG00010413 at 1; Dkt. 1-2, Policy Form CE65240697 at 1). Garage Plus is the only named insured under the Policies.  (Dkt. 1-1, 1-2).

(Dkt. 1-1. Policy Form CG00010413 at 10).  The Policy further extends insured status to an LLC's "volunteer workers" and "employees" subject to similar limitations:

> **2.** Each of the following is also an insured:
>
> > **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

(Dkt. 1-1, Policy Form CG00010413 at 10).  Section IV defines "volunteer workers" and employees" as follows:

> **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> …
>
> **20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(Dkt. 1-1, Policy Form CG00010413 at 14, 17).  The Ohio Security Policy is subject to a $1,000,000 each occurrence liability limit.  (Dkt. 1-1).

Ohio Casualty also issued Excess Liability Policy No. ESO(19)57196541 to Garage Plus (the "Ohio Casualty Policy").  (Dkt. 1-2).  The Ohio Casualty Policy provides so-called "follow form" coverage, meaning it provides an additional layer of coverage over and above the limits of the policy of "first underlying insurance," but subject to all of its terms, conditions, definitions, and exclusions.  (Dkt. 1-2, Policy Form CE65240697 at 1).  The Insuring Agreement provides:

> **I. COVERAGE**
>
> We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance**. Except for the terms, conditions, definitions and

exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

(Dkt. 1-2, Policy Form CE65240697).  The Ohio Casualty Policy identifies the Ohio Security Policy in its declarations and sets forth an additional $2 million liability limit each occurrence. (Dkt. 1-2).

### 3.   The Third Amended Complaint and Policy Limits Demand

On November 5, 2020, the Estate filed a Third Amended Complaint[5] in which it added Mountain Crest as a defendant in the Underlying Action.  (Kiess Decl., Ex. G).  According to the Third Amended Complaint, Jeremy worked as an employee for Mountain Crest.  (Kiess Decl., Ex. G, ¶ 3.18).  In the Third Amended Complaint, the Estate alleged that Jeremy had worked at Mountain Crest's Eatonville job site until 1:00 in the morning the night before the accident and did not get to bed until 3:00 a.m.  (Kiess Decl., Ex. G, ¶ 3.18).  After only three hours of sleep, Jeremy allegedly woke up on the morning of August 9, 2018 and got into the 1986 Chevrolet K-10 pickup to pick up Michael Wager, an architect Mountain Crest had hired for its land development project, at Wager's residence in Lakewood, Washington.  (Kiess Decl., Ex. G, ¶ 3.18).  It was while driving to pick up Wager that the Estate alleges Jeremy fell asleep and veered onto the shoulder, killing Ms. Rainwater.  (Kiess Decl., Ex. G, ¶¶ 3.2 – 3.9).  The Third Amended Complaint added claims against Mountain Crest, but did not mention Garage Plus.  (Kiess Decl., Ex. G, ¶¶ 5.1-6.10, 8.2).

On February 22, 2021, Ohio received a letter from counsel for the Estate dated February 16, 2021 demanding that Ohio pay its "total available limits for Mountain Crest" on or before February 26, 2021.  (Swett Decl., ¶ 3, Ex. A).  The letter referenced the policy numbers for the Garage Plus Policies—BKS(19)57196541 and ESO(19)57196541—but made no mention of Garage Plus.  (Swett Decl., Ex. A).  Ohio promptly examined its records, confirmed that neither

---

[5] The Second Amended Complaint simply revised the caption to include Leah Miller as "Plaintiff Intervenor."  (Kiess Decl., Ex. F).

the Ohio Security Policy nor the Ohio Casualty Policy (the "Policies") listed "Mountain Crest" as an insured, and informed the Estate that the Policies did not afford coverage for Mountain Crest.  (Swett Decl., Ex. B).  Ohio also informed Danny Simon of the Demand.  (Swett Decl., Ex. C).

**4.    The Fourth Amended Complaint and Insurance Claim**

After learning that Ohio did not insure Mountain Crest, the Estate amended its complaint to include claims against Garage Plus.  (Swett Decl., Ex. D).  In a Motion for Leave to Amend filed on March 17, 2021, the Estate proposed to file a Fourth Amended Complaint in which it would allege that Garage Plus owned the "land, hangars, a job shack, and an office" that Mountain Crest used for its Eatonville job site.  (Swett Decl., Ex. D).  As set forth in the Fourth Amended Complaint subsequently filed on April 6, 2021, the Estate alleged that Jeremy had been at both the "Mountain Crest *and Garage Plus*" job site until 3:00 a.m. the night before and that it was both "Mountain Crest *and Garage Plus*" that had instructed Jeremy to pick up Wager for "its (sic) land development project" the next morning.  (FAC, ¶ 3.18) (emphasis added).  Similarly, the Estate alleged that "the motor vehicle involved in the accident was being used for purposes of Jeremy's employment at Mountain Crest Homes *and Garage Plus*, within the scope of his employ."  (FAC, ¶ 6.4) (emphasis added).  Because Danny owned Garage Plus, the Complaint alleged that "Garage Plus had actual or constructive knowledge of … Jeremy['s] drug use," making Garage Plus both vicariously liable under respondeat superior and directly liable under a theory of negligent entrustment.  (FAC, ¶¶ 4.6, 6.1-6.11, 7.2).

Garage Plus tendered the Fourth Amended Complaint to Ohio for defense and indemnity coverage on March 31, 2021.  (Swett Decl., Ex. D).  Ohio promptly investigated the allegations.  (Swett Decl., ¶ 8).  But because the complaint clearly alleges that the injuries arose out of the "ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured" within the meaning of Exclusion 2.g., Ohio concluded that the Policy did not afford coverage.  (Swett Decl., ¶ 8, Ex. E).  Ohio

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 9

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

therefore disclaimed any duty to defend or indemnify Garage Plus by letter dated April 6, 2021, and also declined the Estate's demand.  (Swett Decl., Exs. E & F).

### 5.      The Stipulated Settlement and Covenant Not to Execute

On July 27, 2021, Mountain Crest and Garage Plus entered into a "Settlement Agreement, Assignment of Rights, Covenant Not to Execute, and Covenant Judgment" with the Estate.  (Kiess Decl., Ex. H).  In the Agreement, Mountain Crest and Garage Plus agreed to stipulate to a judgment against them in the Underlying Action in the amount of $12 million in exchange for a covenant that the Estate will not execute that judgment against either company.  (*Id.*).  Instead, Garage Plus and Mountain Crest purported to assign to the Estate all rights under the Policies and all claims or causes of action against their respective insurers— Garage Plus against "Liberty Mutual"[6] and Mountain Crest against "Nautilus"—and the Estate agreed to pursue satisfaction of the judgment solely against these insurers.  (*Id.*).  Despite facing no potential exposure for the settlement amount and providing no explanation as to how the parties arrived at the $12 million figure, the Stipulated Settlement also recites Mountain Crest's and Garage Plus's purported agreement that this amount "is reasonable."  (*Id.*).

## III.  <u>LEGAL STANDARDS</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  The moving party generally bears the burden to establish the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Cases involving a liability insurer's duty to defend, however, generally turn on the "purely legal questions" of interpretation of an insurance policy and a complaint.  *Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016).  Because interpretation of legal documents does

---

[6] The Stipulated Settlement does not correctly identify Ohio Security or Ohio Casualty as the insuring entities.  Ohio reserves any and all rights with respect to Defendants' failure to correctly identify the companies that issued the Policies in the Stipulated Settlement.

not present factual issues, such cases "are routinely resolved at the summary judgment stage." *Cartre*, 158 F. Supp. 3d at 1114.

## IV.  ARGUMENT

The undisputed facts clearly demonstrate that the Policies do not afford coverage for the Estate's claims against Garage Plus.  A policy of liability insurance affords two main benefits to the insured: the duty to defend and the duty to indemnify.  *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129, 196 P.3d 664 (2008).  Under Washington law, an insurer's duty to defend its insured arises when the facts alleged in the complaint against the insured could, if proven, impose liability within the policy's coverage.  *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014).  In determining whether this duty exists, consideration is generally limited to "the 'eight corners' of the insurance contract and the underlying complaint."  *Expedia* 180 Wn.2d at 803.  When it is clear from the face of the complaint that the claim is not covered by the policy, no duty to defend will arise.  *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 471, 209 P.3d 859 (2009); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 951 P.2d 1124, 1126 (1998).  And because the duty to defend is broader than and "encompasses fully the duty to indemnify," a determination that the insurer has no duty to defend "establishes *a fortiori* that [it] has no duty to indemnify…."  *Atlantic Cas. Ins. Co. v. Johnny's Quality Exteriors*, 131 F. Supp. 3d 1077, n.5 (E.D. Wash. 2015); *see also Homesite Ins. Co. of the Midwest v. Walker*, No. C18-5879 BHS, 2019 WL 5802048, *1 (W.D. Wash. Nov. 7, 2019) ("a conclusion that there is no duty to defend necessarily implies that there is no conceivable coverage under the Policy.").

### A.    Exclusion 2.g Clearly Excludes Coverage for Garage Plus and Persons Acting in Their Official Capacity for Garage Plus

In this case, Ohio had no duty to defend because the Auto Exclusion clearly excludes coverage for the claims alleged in the Underlying Action.  That exclusion, Exclusion 2.g. of the Ohio Security Policy, broadly excludes coverage for bodily injury arising out of the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 11

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

ownership, use, or entrustment to others of an auto owned or operated by any insured:

> This insurance does not apply to: …
>
> 'Bodily injury' … arising out of the ownership, maintenance, use or entrustment to others of any … "auto" … owned or operated by or rented or loaned to any insured….
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

(Ohio Security Policy Form CG00010413 at 4).  Because the coverage afforded by the Ohio Casualty policy follows that afforded by the Ohio Security Policy, the Ohio Casualty Policy incorporates this exclusion.  *Piper Jaffray Co. Inc. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1151 (D. Minn. 1997) (holding that where excess policies "follow form" to the underlying policies, coverage "turn[s] solely on the interpretation of the underlying policies.").

As numerous courts have held, the language of this exclusion is clear and unambiguous. *Rakestraw v. South. Guar. Ins. Co. of Ga.*, 262 Fed.App'x 180, 182 (11th Cir. 2008) (holding that the exclusion "is unambiguous."); *Charter Oaks Fire Ins. Co. v. Clayton*, 62 F.3d 1414 (4th Cir. 1995) (finding auto accident "unambiguously excluded by the auto use exclusion in the policy."); *Michael Carbone, Inc. v. General Acc. Ins. Co.*, 937 F. Supp. 413 (E.D. Pa. 1996); *Owners Ins. Co. v. Mabry*, 2020 WL 1550228, * 2 (S.D. Ala. Mar. 31, 2020).  Its purpose is to limit coverage for risks typically covered by other insurance for which the insured must pay a separate premium—*i.e.* an auto policy.  *Maxum Indem. Co. v. Kaur*, 356 F. Supp. 3d 987, 1001 (E.D. Cal. 2018).  By its plain terms, the exclusion applies when two requirements are satisfied: (1) the injury at issue "aris[es] out of the ownership, maintenance, use or entrustment to others of any … 'auto'"; and (2) that auto is "owned or operated by or rented or loaned to any insured."  *Beckman v. Connolly*, 79 Wash. App. 265, 270, 898 P.2d 357 (1995).  The allegations in the Fourth Amended Complaint satisfy both requirements.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT NO.: 3:21-CV-05579-BHS

PAGE 12

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

### 1. The August 9, 2018 Accident Arose Out of the Ownership, Use or Entrustment to Others of the Chevrolet K-10 Pickup

First, irrespective of which potential insured is alleged to be liable, Ms. Rainwater's alleged injuries clearly arose out of the ownership, use, or entrustment to others of the Chevrolet K-10 pickup.  The Fourth Amended Complaint alleges four theories of liability against three potential insureds: (1) negligent entrustment against Garage Plus and Danny; (2) vicarious liability against Danny under the "family car doctrine"; (3) ordinary negligence against Jeremy; and (4) vicarious liability against Garage Plus under the agency theory of respondeat superior.  All four claims arise out of the ownership, use, or entrustment to others of the Chevrolet K-10 Pickup under the exclusion's first prong.

### a. Claims Under the Negligent Entrustment and Family Car Doctrines Arise Out Of the "Entrustment to Others" of an Auto

The first two claims—for negligent entrustment and liability under the family car doctrine—clearly fall within the exclusion because an essential element of both is that the defendant "entrusted" the vehicle in question to others.  Naturally, a party in control of a vehicle is only liable under the negligent entrustment doctrine if, among other elements, he "supplied or entrusted" the vehicle to someone else.  *See Parilla v. King County*, 138 Wash.App. 427, 441, 157 P.3d 879 (2007).  Similarly, liability under the family car doctrine arises only when the owner of the vehicle allows another family member to use it with his or her express or implied consent.  *Cameron v. Downs*, 32 Wash.App. 875, 880, 650 P.2d 260 (1982).  Although the Policy does not define the term "entrustment," the "plain, ordinary and popular" meaning of that term clearly encompasses the act of consenting to another's use of a vehicle.  *See Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 284, 313 P.3d 395 (2013) (holding that undefined terms in an insurance policy "will be given their plain, ordinary, and popular meaning…."); *Cameron*, 32 Wash.App. at 875 (paraphrasing the elements of the family car doctrine as involving "entrust[ment]" of the car by one family

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 13

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

member to another).  "Entrust" simply means "to commit [something] to another with confidence."[7]  Since neither Garage Plus nor Danny could be held liable for negligent entrustment or under the family car doctrine without proof that they entrusted the Chevrolet K-10 pickup to Jeremy, their alleged liability under these theories necessarily "arises out of" the "entrustment to others" of an auto within the meaning of the exclusion.

>    **b.**    ***Jeremy's Alleged Negligence and Garage Plus's Alleged Vicarious Liability for It Arise Out Of the "Use" of an Auto***

The latter two claims—ordinary negligence against Jeremy and vicarious liability against Garage Plus—also arise out of the "use" of an auto within the plain language of the exclusion.  The Fourth Amended Complaint unequivocally alleges that Jeremy was driving the Chevrolet K-10 pickup at the time of the accident and that it was the blunt force trauma from the vehicle striking Ms. Rainwater that caused her injuries.  (FAC, ¶¶ 3.1-3.10).  The Chevrolet K-10 pickup is undisputedly an "auto" within the meaning of the Policy, and Jeremy's operation of it clearly qualifies as "use" of the vehicle under the plain meaning of that term.  *See Kroeber v. GEICO Ins. Co.*, 184 Wn.2d 925, 931, 366 P.3d 1237 (2016) (holding that an accident "arises out of" the "use" of a vehicle when the facts establish "some causal relationship between a condition of the vehicle, a permanent attachment thereto, or some aspect of its operation.").  It is therefore undisputed that Ms. Rainwater's injuries "arose out of" Jeremy's "use" of the vehicle within the plain language of the exclusion.

The agency claims against Garage Plus fall within the exclusion for the same reason.  In Count VI of the Fourth Amended Complaint, the Estate alleges that Garage Plus is liable for Ms. Rainwater's death because Jeremy "was an agent [acting] within the scope of his employment and … in furtherance of Garage Plus' interest when he struck and killed Susan Rainwater."  (FAC, ¶ 9.2).  These allegations rely upon the doctrine of respondeat superior.

---

[7] *See* Entrust, Merriam-Webster, https://www.merriam-webster.com/dictionary/entrust.

*See Rahman v. State*, 170 Wn.2d 810, 815, 246 P.3d 182 (2011) (holding that the test for determining application of respondeat superior is whether the employee's acts occurred "within the scope or course of employment," or as "sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest."). Respondeat superior is a theory of vicarious liability, which, when applicable, attributes the conduct of an employee to its employer. Restatement (Third) of Agency § 7.07 cmt a. As a result, because Garage Plus can only be vicariously liable if Jeremy's "use" of the auto is attributed to it, Garage Plus's potential liability necessarily arises out of the "use" of an auto as well. *See Discovery Prop. & Cas. Ins. Co. v. Lexington Ins. Co.*, 664 F. Supp. 2d 1296, 1302-03 (S.D. Fla. 2009) (holding that exclusion applied to bar coverage for employer because employee's use of his auto would be imputed to employer under theories of vicarious liability).

**2.      The Chevrolet K-10 Pickup was "Owned or Operated by or Rented or Loaned to Any Insured"**

The exclusion's second prong is also satisfied, because the undisputed facts demonstrate that the Chevrolet K-10 pickup was "owned or operated by or rented or loaned to any insured." The allegations in the Fourth Amended Complaint demonstrate both that Danny and Jeremy were "insureds" who "owned" and "operated" the pickup, respectively, and that they "loaned" it to Garage Plus on the day of the accident. For any of these independent reasons, the exclusion precludes coverage.

*a.      The Fourth Amended Complaint Alleges that Danny and Jeremy were "Insureds" Who Owned and Operated the Pickup*

First, Danny and Jeremy were both "any insured[s]" who owned and operated the pickup. Notably, the exclusion uses the term "*any* insured." Washington courts have long held that this language is unambiguous and applies irrespective of whether the insured seeking coverage is the same person that engaged in the excluded conduct. *Caroff v. Farmers Ins. Co. of Wash.*, 155 Wash.App. 724, 989 P.2d 1233 (1999); *Mutual of Enumclaw Ins. Co. v. Cross*,

103 Wash.App. 52, 10 P.3d 440 (2000).  Thus, an exclusion for injury arising out of child molestation by "any insured" barred coverage for the parents of an alleged abuser even though the parents did not themselves engage in an act of abuse.  *Caroff*, 98 Wash.App. at 730-732. And an exclusion for intentional acts of "an insured" barred coverage for "anyone insured under the policy" and "[wa]s not restricted to the intentional acts of the particular insured sought to be held liable."  *Cross*, 103 Wash.App. at 58-60.  Likewise, an exclusion for injury arising out of the use or entrustment to others of an auto "owned or operated by or rented or loaned to *any* insured" excludes coverage for all insureds, irrespective of which particular insured owned, operated, rented, or was loaned the auto.  *See, e.g., Michael Carbone, Inc. v. General Acc. Ins. Co.*, 937 F. Supp. 413 (E.D. Pa. 1996) (holding that similar exclusion applied to bar coverage for injuries arising out of collision caused by named insured's employee acting within the scope of employment); *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832 (Okla 2005) ("the term 'any insured' in an 'Auto Exclusion' clause of a commercial general liability policy excludes from coverage all automotive occurrences attributable to any of the insureds.").

This principle resolves the coverage dispute in this case, as the Fourth Amended Complaint clearly indicates that the Chevrolet K-10 pickup involved in the accident was both "owned … by" and "operated by" "any insured."  First, the Fourth Amended Complaint alleges that Jeremy was acting "within the scope of his employment and acting in furtherance of Garage Plus' interest when he struck and killed Susan Rainwater."  (FAC, ¶ 9.2).  If true, this allegation would make Jeremy an insured under the plain terms of the Policy, which extends insured status to the "employees" of a named insured "for acts within the scope of their employment" or "while performing duties related to the conduct of [the named insured's] business."  Because the Fourth Amended Complaint makes clear that Jeremy was acting within the scope of his employment at the time of the accident, the pickup was necessarily "operated by … an insured" within the meaning of the exclusion.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 16

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Second, the exclusion also applies because Ms. Rainwater's injuries arose out of the use of an auto "owned … by … any insured." The Complaint clearly and unequivocally alleges that Danny "owned, maintained, and provided" the pickup. (FAC, ¶ 3.2). It also alleges that Danny "owned and operated" Garage Plus. (FAC, ¶ 1.3). Under Washington law, the only way one can "own" and "operate" a limited liability company is to be its member and manager. *See* RCW 25.15.006, *et seq*. Under the terms of the Policy, therefore, Danny qualified as an "insured" "with respect to the conduct of [Garage Plus'] business" and "with respect to [his] duties as [Garage Plus'] manager…." Unquestionably, the conduct of Garage Plus' business includes instructing Jeremy to pick up architect Michael Wager, as the complaint specifically alleges Jeremy was acting within the scope of his employment in doing so. Thus, Ms. Rainwater's injuries arose out of the use of an auto "owned … by … any insured" for purposes of the auto exclusion.

> **b.    The Fourth Amended Complaint Alleges that Jeremy and Danny "Loaned" the Pickup to Garage Plus on the Day of the Accident**

But even if the exclusion applied only to an auto "owned or operated by or rented or loaned to *the* insured" (which it does not), it would still preclude coverage in this case, because the pickup was "loaned to" *the* named insured, Garage Plus, on the day of the accident. The Policy does not define the operative term "loaned to." But courts have consistently held that this term has a broad meaning in this exclusion encompassing "many different types of formal and informal arrangements." *Scottsdale Ins. Co. v. Thornton*, 300 F. Supp. 3d 1233, 1242 (E.D. Wash. 2018). In the context of tangible property like vehicles, the plain, ordinary and popular meaning of the word "loan" refers to "something lent usually for the borrower's temporary use."[8] Federal courts in Washington and elsewhere have thus held that a "loan" of an auto occurs when one grants temporary permission to use the vehicle in the furtherance of

---

[8] *See* Loaned, Merriam-Webster, https://www.merriam-webster.com/dictionary/loaned

his employer's business." *Thornton*, 300 F.Supp. 3d at 1241-42 (citing *EZ Rolloffs, LLC v. Hermitage Ins. Co.*, No. 03-C-5564 JMR/FLN, 2005 WL 984347, *4 (D. Minn. April 27, 2005)).

*EZ Rolloffs* is directly on point.  There, an individual owned two companies: a construction company, which owned a Chevrolet Tahoe for which it maintained auto insurance; and a manufacturing company, which had only a commercial general liability ("CGL") policy.  *EZ Rolloffs*, 2005 WL 984347, *1.  An accident occurred while the owner's brother was transporting debris for the manufacturing company in the Tahoe.  *Id*.  The CGL insurer denied coverage, relying on the auto exclusion.  *Id*. at *2.  The manufacturing company argued that the exclusion did not apply because the manufacturing company did not "own" the Tahoe—the construction company did.  *Id*. at *3.  The Court found this irrelevant, holding that the brother, as agent of the manufacturing company, "loaned" the Tahoe to the manufacturing company.  *Id*. at *5.  The plain meaning of "loan," the Court held, is simply "[t]o give into another's keeping for temporary use on condition [of] … return…."  *Id*. at *4.  And by granting temporary permission for the manufacturing company to use the Tahoe for business purposes, the brother plainly "loaned" the Tahoe to the named insured within the meaning of the exclusion.  *Id*. at *4-5.  Therefore, the exclusion barred coverage and the CGL insurer had no duty to defend or indemnify the manufacturing company.  *Id*.  Several courts have embraced this analysis, including the Eastern District of Washington.  *See Thornton*, 300 F. Supp. 3d at 1242 (citing *EZ Rolloffs*) (applying Washington law); *Middlesex Mut. Assur. Co. v. Fish*, 738 F. Supp. 2d 124, 138-139 (D. Me. 2010) (citing *EZ Rolloffs* and holding that exclusion applied because insured's owner "gave himself permission to use the truck for business purposes."); *see also Penn-Am. Ins. Co. v. So. Fla. Prep. Christian Academy, Inc.*, No. 12-60359-CIV2014 WL 12489671, *4 n. 4 (S.D. Fla. Aug. 12, 2014) (collecting cases).

The same logic applies here.  Although Garage Plus did not "own" the pickup, the Fourth Amended Complaint makes clear that both Jeremy and Danny were agents of Garage

Plus with authority to grant Garage Plus permission to use the vehicle for business purposes, which they necessarily did when Jeremy was "instructed" to pick up an architect on the morning of the accident.  Indeed, as multiple courts have recognized, any other holding would be logically inconsistent—that is, there is no scenario in which Jeremy *was* an agent of Garage Plus for purposes of attributing his negligent operation of the pickup to the company, but simultaneously ***not*** an agent who took possession of the pickup on Garage Plus's behalf.  *See EZ Rolloffs*, 2005 WL 984347 at *5 (refusing to "engage in a fiction" under which one's negligent operation "can be imputed to the company, while simultaneously finding he is not an agent who took physical possession of the vehicle on the company's behalf."); *Fish*, 738 F. Supp. 2d at 138 (same).  In short, Garage Plus is either not liable, or it is liable, but only for conduct that falls entirely within the exclusion.  The Estate cannot have it both ways.

****

Since the Fourth Amended Complaint itself alleges that Ms. Rainwater's injuries (1) arose out of the "ownership," "use" or "entrustment to others" of an auto that was (2) "owned or operated by" or "loaned to" any insured, the Auto Exclusion clearly and unambiguously bars coverage for the Underlying Action.

## B. The Policies Afford No Coverage for Liability of Jeremy or Danny in their Individual Capacities

Finally, any argument for coverage on the grounds that the complaint also alleges liability against Jeremy or Danny in their individual capacities—separate from their capacities as members, managers, or employees of Garage Plus—is foreclosed by the Policy's insuring agreement.  Under Washington law, the Court only considers whether an exclusion applies if the insured first satisfies its burden to show that the allegations fall within the Policy's coverage grant.  *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992).  Irrespective of any exclusions, the Policy only affords coverage in the first instance for "sums that ***the insured*** becomes legally obligated to pay …." (Ohio Security

Policy Form CG00010413 at 1) (emphasis added).  Since the Policy makes clear that members, managers, and employees of a limited liability company only qualify as insureds with respect to conduct in their capacities as such, conduct outside of that official capacity simply does not satisfy the insuring agreement.  *Thornton*, 300 F. Supp. 3d at 1239-1240.

The United States District Court for the Eastern District of Washington recently applied these principles to a strikingly similar set of facts.  In *Thornton*, the insured, the Malo Store, was a sole proprietorship that operated a U-Haul rental operation.  *Id*. at 1236.  The store had a commercial general liability policy that extended insured status to its owner, Lee Thornton, but "only with respect to the conduct of [the] business."  *Id*. at 1239.  After Thornton's two-year-old grandson, E.T. died in an accident involving Thornton's operation of a U-Haul truck, E.T.'s personal representative sued.  *Id*. at 1237.  Seeking to avoid the Policy's auto exclusion, the personal representative alleged and argued that Thornton engaged in an act of negligence "separate and distinct" from his operation of the truck by allowing E.T., whom Thornton was babysitting at the time, "to leave the store and walk to the parking lot."  *Id*. at 1239.  The Court rejected this argument, observing that "[t]he named insured … is the Malo Store" and "[t]here are no facts that reasonably infer Lee Thornton was babysitting E.T. in furtherance of the Malo Store."  *Id*.  Because "[t]he only alleged act undertaken for the Store was moving the U-Haul truck," the Court held, the Policy would not cover Thornton "even if [he] was negligent in babysitting E.T."  *Id*. at 1239-1240.

The same principles apply in this case to bar coverage for any conduct of Jeremy or Danny their individual capacities.  Ohio recognizes that the Fourth Amended Complaint contains allegations suggesting that Danny acted negligently in ways that do not involve the operation of Garage Plus, such as by failing to prevent Jeremy from accessing the pickup.  (FAC, ¶ 6.6).  Similarly, it alternatively alleges that Jeremy "was acting individually" when he "took it upon himself to operate a motor vehicle on public roads."  (FAC, ¶¶ 4.2, 4.6).  But to the extent either Jeremy or Danny might be liable for conduct in their individual capacity, there

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 20     **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

simply is no coverage under the Policy's insuring agreement.  Thus, any attempt to avoid the Auto Exclusion by arguing that the vehicle was not "owned" or "operated" by an insured proves too much.  That is, it establishes only that the Court should grant Ohio's motion for the simple reason that the Policy does not afford coverage in the first instance.

## V. <u>CONCLUSION</u>

Because the undisputed facts demonstrate that the Policies do not afford coverage for any potential liability in the Underlying Action, Ohio respectfully requests that its Motion for Summary Judgment be granted and that the Court enter an order declaring that Ohio had no duty to defend or indemnify Garage Plus, Danny, or Jeremy in the Underlying Action.

DATED:  October 15, 2021

BULLIVANT HOUSER BAILEY PC


By  /s/ Jared F. Kiess
    Michael A. Guadagno, WSBA #34633
    E-mail:  michael.guadagno@bullivant.com
    Jared F. Kiess, WSBA #54532
    E-mail:  jared.kiess@bullivant.com

Attorneys for Plaintiffs Ohio Security Insurance Company and the Ohio Casualty Insurance Company

4823-5376-9727.1

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 21

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF e-filing system which will send notification of such

filing to the persons listed below:

| Darrell L. Cochran | ☐ via hand delivery. |
| Kevin M. Hastings | ☐ via first class mail. |
| Christopher E. Love | ☐ via email |
| Patrick A. Brown | ☒ CM/ECF E-service |

Alexander G. Dietz
PFAU COCHRAN VERTETIS AMALA PLLC
909 A Street, Suite 700
Tacoma, WA 98402-4413
darrell@pcvalaw.com
kevin@pcvalaw.com
chris@pcvalaw.com
pbrown@pcvalaw.com
adietz@pcvalaw.com

*Attorneys for Defendant Alan E. Rainwater,*
*individually and in his capacity as personal*
*representative for the Estate of Susan Rainwater*
*and Danny Simon*

Dated:  October 15, 2021.


/s/ Kristin Anderson
Kristin Anderson, Legal Assistant

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO.: 3:21-CV-05579-BHS

PAGE 22

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930