1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OHIO SECURITY INSURANCE
COMPANY, et al.,

                    Plaintiffs,

        v.

GARAGE PLUS STORAGE
AVIATION LLC, et al.,

                    Defendants.

CASE NO. 3:21-cv-5579-BHS

ORDER

        This matter comes before the Court on Plaintiffs Ohio Security Insurance

Company and Ohio Casualty Insurance Company's (collectively "Ohio") motion for

summary judgment, Dkt. 14, motions to strike and dismiss Defendants' affirmative

defenses, Dkts. 25, 46, and motion for protective order, Dkt. 30, and Defendant Alan

Rainwater's Rule 56(d) motion to continue, Dkt. 18. The Court has considered the

briefing filed in support of and in opposition to the motions and the remainder of the file

and hereby rules as follows.

1

## I.    FACTUAL & PROCEDURAL BACKGROUND

2      Ohio commenced this declaratory judgment action in August 2021 involving a

3    dispute as to liability insurance coverage for an underlying state court action, *Alan*

4    *Rainwater, et al. v. Marlene Perdue, et al.*, Pierce County Case No. 18-2-12960-1 ("the

5    Underlying Action"). Dkt. 1.

6      The Underlying Action arises out of the wrongful death of Susan Rainwater. *See*

7    Dkt. 1-3. On August 9, 2018, Ms. Rainwater was riding her bicycle on State Route 7 in

8    Eatonville, Washington when she was struck by a 1986 Chevrolet K-10 pickup truck

9    driven by Jeremy Simon. Dkt. 1, ¶ 20. Mrs. Rainwater died at the scene. *Id.* Defendant

10    Alan Rainwater, Mrs. Rainwater's husband and personal representative of her estate, filed

11    suit again Jeremy Simon and his father, Danny Simon, in the Underlying Action. *Id.* ¶ 21.

12    Defendant Leah Marie Miller intervened as a plaintiff in the Underlying Action, and the

13    Estate subsequently added Jeremey's mother, Marlene Perdue, Mountain Crest Homes

14    LLC, and Garage Plus Storage Aviation LLC as defendants.[1] *Id.*

15      The Fourth Amended Complaint in the Underlying Action alleged that the

16    negligence of Jeremy, his parents, and the two companies owned by Danny, Mountain

17    Crest and Garage Plus, caused or contributed to the August 9 accident. *Id.* ¶ 22; *see also*

18    Dkt. 1-3. Specifically, the Fourth Amended Complaint alleged that Jeremy had disclosed

19    to Danny that he was having drug problems, that Danny relayed that disclosure to Perdue,

20

---

21      [1] The Court uses "Jeremy" and "Danny" to refer to Jeremy Simon and Danny Simon,
respectively, and uses "the Estate" to refer to Mr. Rainwater for ease of reference and intends no
22    disrespect.

1    that Danny told Perdue that Jeremy could not drive the 1986 Chevrolet K-10 pickup truck

2    until Jeremy completed drug treatment, and that Perdue did not keep the keys of the

3    pickup truck from Jeremy despite knowing about his drug issues. Dkt. 1-3, ¶ 3.17. The

4    Fourth Amended Complaint further alleged that Jeremy was employed by Mountain

5    Crest and Garage Plus and that on August 9 he drove the pickup truck, owned by Danny,

6    for the purposes of his employment. *Id.* ¶¶ 3.18, 6.4.

7         Garage Plus operated a storage facility in Spanaway, Washington and owned

8    airplane hangars and real property used by Mountain Crest for its land development

9    project. *See* Dkt. 15-5 at 8–9; Dkt. 1-3, ¶ 3.18. Ohio issued commercial package and

10    excess policies to Garage Plus. Dkt. 1, ¶ 11. Ohio Security issued commercial package

11    policy number BKS (19)57196541, which generally affords liability coverage for "those

12    sums that the insured becomes legally obligated to pay as damages because of 'bodily

13    injury' or 'property damage' . . . caused by an 'occurrence.'" Dkt. 1-1 at 57. This

14    coverage is subject to various exclusions, one of which is the subject of this declaratory

15    action. Exclusion 2.g provides, in relevant part, that the Policy does not apply to:

16         "Bodily injury" or "property damage" arising out of the ownership,
           maintenance, use or entrustment to others of any aircraft, "auto" or

17         watercraft owned or operated by or rented or loaned to any insured. Use
           includes operation and "loading or unloading".

18

19         This exclusion applies even if the claims against any insured allege
           negligence or other wrongdoing in the supervision, hiring, employment,
           training or monitoring of others by that insured, if the "occurrence" which

20         caused the "bodily injury" or "property damage" involved the ownership,
           maintenance, use or entrustment to others of any aircraft, "auto" or

21         watercraft that is owned or operated by or rented or loaned to any insured.

22

ORDER - 3

1    *Id.* at 60. An "auto" under the terms of the Ohio Security Policy means "[a] land motor

2    vehicle, trailer or semitrailer designed for travel on public roads, including any attached

3    machinery or equipment[.]" *Id.* at 70.

4          In addition to the named insured, Garage Plus, the Ohio Security Policy also

5    extends insured status to other persons acting in certain capacity with respect to the

6    named insured. *See id.* at 66–67. For a limited liability company like Garage Plus, the

7    Policy provides that the company's "members are also insureds, but only with respect to

8    the conduct of [the] business" and that "managers are insureds, but only with respect to

9    their duties as [] managers." *Id.* at 66. The Policy further extends insured status to

10   "'volunteer workers' only while performing duties related to the conduct of [the]

11   business" and "'employees'. . . but only for acts within the scope of their employment by

12   [the business] or while performing duties related to the conduct of [the] business." *Id.*

13   The Ohio Security Policy is subject to a $1,000,000 each occurrence liability limit. Dkt.

14   1, ¶ 15.

15         Ohio Casualty issued an Excess Liability Policy No. ESO (19)57196541 to Garage

16   Plus. *See* Dkt. 1-2. The Ohio Casualty Policy provides an additional layer of coverage

17   over and above the limits of the policy of the "first underlying insurance" but is subject to

18   all the first underlying insurance policy's terms, conditions, definitions, and exclusions.

19   *Id.* at 19. The Ohio Casualty Policy identifies the Ohio Security Policy as the "first

20   underlying insurance" and is subject to liability of $2,000,000 each occurrence. Dkt. 1,

21   ¶¶ 18–19.

22

1       Garage Plus tendered the Fourth Amended Complaint in the Underlying Action to

2 Ohio for defense and indemnity on March 31, 2021. *See* Dkt. 16-4. Ohio asserts that it

3 promptly investigated the allegations and evaluated coverage under the Policies. Dkt. 16,

4 ¶ 8. Ohio concluded that the Policies did not afford coverage because it determined that

5 Ms. Rainwater's injuries arose out of the "ownership, maintenance, use or entrustment to

6 others of any 'auto' owned or operated by or rented or loaned to any insured" within the

7 meaning of Exclusion 2.g. Dkt. 14 at 9 (alterations omitted); *see also* Dkt. 16-5. Ohio

8 disclaimed any duty to defend or indemnify Garage Plus on April 6, 2021 and declined

9 the Estate's settlement demand. *See* Dkts. 16-5, 16-6.

10       On July 27, 2021, Mountain Crest and Garage Plus entered into a Settlement

11 Agreement, Assignment of Rights, Covenant Not to Execute, and Covenant Judgment

12 with the Estate. *See* Dkt. 15-8 at 8–17. Mountain Crest and Garage Plus agreed to

13 stipulate to a judgment against them in the Underlying Action for $12 million in

14 exchange for a covenant that the Estate will not execute that judgment against either

15 company. *Id.* at 13–14. Mountain Crest and Garage Plus additionally assigned to the

16 Estate any and all of their rights against their respective insurance companies.[2] *Id.* at 15.

17       Ohio seeks a Court order pursuant to the Declaratory Judgments Act, 28 U.S.C.

18 § 2201(a), declaring that Ohio had no duty to defend or indemnify in the Underlying

19 Action. Dkt. 1 at 12. Ohio moves for summary judgment, arguing that the Policies do not

20

---

21    [2] Mountain Crest is insured by Nautilus Insurance Company, who has also brought a declaratory action regarding its obligations to provide insurance coverage in connection with the

22 Underlying Action. *See Nautilus Ins. Co. v. Rainwater, et al.*, No. 21-cv-5558 (W.D. Wash.).

1  afford coverage for the Estate's claims against Garage Plus. Dkt. 14. In response, the

2  Estate seeks a Federal Rule of Civil Procedure 56(d) continuance of Ohio's summary

3  judgment motion so that it can conduct discovery on its affirmative defenses of coverage

4  by estoppel, unjust enrichment, and unclean hands. Dkt. 18. Ohio additionally moves to

5  strike and dismiss the Estate's and Garage Plus, Mountain Crest, and Danny's affirmative

6  defenses, Dkts. 25, 46, and for a protective order relating to discovery on Defendants'

7  affirmative defenses, Dkt. 30.

8  ## II.   DISCUSSION

9  **A.     Motions to Strike or Motion to Dismiss**

10  Defendants assert five affirmative defenses:

11  A. Plaintiff has failed to state a claim upon which relief can be granted.
   B. Plaintiff has engaged in bad faith and as such, its claims are barred by

12  the doctrines of estoppel, waiver and/or laches.
   C. Plaintiff's bad faith has resulted in its unjust enrichment by collecting

13  insurance premiums but failing to provide a defense or coverage for
   claims covered under its insurance policy.

14  D. Plaintiff's bad faith bars its claims under the doctrine of unclean hands.
   E. Defendant reserves the right to amend affirmative defenses as new

15  information becomes available.

16  Dkt. 17 at 7; *see also* Dkt. 34 at 7–8; Dkt. 35 at 7; Dkt. 36 at 7–8.

17  Ohio moves to strike and dismiss Defendants' affirmative defenses, primarily

18  arguing that their bad faith defense is not a proper affirmative defense, that the defense

19  should be construed as a counterclaim, and that the counterclaim should be dismissed

20  pursuant to Rule 12(b)(6). Dkts. 25, 46. Ohio additionally argues that Mountain Crest and

21  Garage Plus do not have standing to allege bad faith. Dkt. 46 at 8–10.

22

ORDER - 6

1

**1.      Standards**

The Federal Rules of Civil Procedure allow a district court to "strike from a
pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
matter." Fed. R. Civ. P. 12(f). "An affirmative defense, under the meaning of Federal
Rule of Civil Procedure 8(c), is a defense that does not negate the elements of the
plaintiff's claim, but instead precludes liability even if all of the elements of the
plaintiff's claim are proven." *Beaver v. Tarsadia Hotels*, 315 F.R.D. 346, 349 (S.D. Cal.
2016) (internal quotation and citations omitted). But, even if a defense is insufficient as
an affirmative defense and "[i]f a party mistakenly designates . . . a counterclaim as a
defense, the court must, if justice requires, treat the pleading as though it were correctly
designated . . . ." Fed. R. Civ. P. 8(c)(2). A motion to dismiss a counterclaim under Rule
12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's
complaint. *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal 2015).

**2.      Affirmative Defenses A and E**

Preliminarily, the Court agrees that Defendants' Affirmative Defenses A and E are
improper affirmative defenses. Relevant to Affirmative Defense A, "[a] defense which
demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."
*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). And as to
Affirmative Defense E, "Rule 15 does not require a party to reserve the right to assert
additional defenses." *Johnson v. Providence Health & Servs.*, No. C17-1779-JCC, 2018
WL 2289331, at *3 (W.D. Wash. May 18, 2018) (internal citation omitted). Accordingly,
"reservation of rights language is therefore immaterial to its affirmative defenses." *Id.*

1    Ohio's motion to strike is therefore GRANTED as to affirmative defenses A and

2    E, without leave to amend.

3    ### 3.    Affirmative Defenses B, C, and D

4    Ohio additionally argues that the Court should strike Defendants' "bad faith"

5    Affirmative Defense because an affirmative claim for insurance bad faith is not a proper

6    affirmative defense. *See e.g.*, Dkt. 25 at 5–7. It further argues that, because the allegation

7    of bad faith provides the sole basis for the defenses of "estoppel," "waiver," "laches,"

8    "unjust enrichment," and "unclean hands," those affirmative defenses should be stricken

9    as well. *Id.* at 7.

10    The Estate clarifies in its motion for a Rule 56(d) continuance that its affirmative

11    defenses are coverage by estoppel, unjust enrichment, and unclean hands. *See* Dkt. 18 at

12    2. Washington cases recognize a rebuttable presumption of harm and that coverage by

13    estoppel is one appropriate remedy when an insurer acts in bad faith by improperly

14    refusing to defend. *See Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 562–63 (1998). Even

15    where there would be no coverage or right to a defense under a policy's terms, if an

16    insurer mishandles a claim in bad faith, coverage by estoppel may be available. *St. Paul*

17    *Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131–32 (2008); *see also Truck*

18    *Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 759 (2002) (en banc) ("[A]n insurer

19    that, in bad faith, refuses or fails to defend is estopped from denying coverage.").

20    Defendants' claim of bad faith asserted in Affirmative Defenses B through D

21    could be an affirmative defense because "it defeats the claim that [Ohio] had no duty to

22    indemnify their insureds even if [Ohio's] interpretation of their policies is correct and

1  under the language of the policies there would have been no duty to indemnify their

2  insureds." Dkt. 28 at 8 n.9. Indeed, this Court has considered bad faith and coverage by

3  estoppel as either an affirmative defense or counterclaim. *See, e.g.*, *Allstate Prop. & Cas.*

4  *Ins. Co. v. A.R.*, No. C13-6041 RBL, 2014 WL 3579672, at *5–6 (W.D. Wash. July 21,

5  2014). But in this instance, the Court agrees with Ohio that bad faith and coverage by

6  estoppel should be categorized as a counterclaim, not an affirmative defense, because it

7  may provide independent relief for Defendants.

8       The Court therefore converts Affirmative Defenses B, C, and D into counterclaims

9  pursuant to Rule 8(c)(2). Rule 12(b)(6) and the plausibility standard apply to

10  counterclaims, *see AirWair Int'l*, 84 F. Supp. 3d at 949–50, and the assertions of bad faith

11  as currently alleged do not meet this standard. The Court therefore GRANTS Ohio's

12  motion to dismiss as to Affirmative Defense B, C, and D, but with leave to amend as a

13  counterclaim. Any amendment should consider the standing issues raised by Ohio. *See*

14  Dkt. 46 at 8–10.

15  **B.     Motion for Summary Judgment and Motion for Rule 56(d) Continuance**

16        **1.     Standards**

17       Summary judgment is proper only if the pleadings, the discovery and disclosure

18  materials on file, and any affidavits show that there is no genuine issue as to any material

19  fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

20  The moving party is entitled to judgment as a matter of law when the nonmoving party

21  fails to make a sufficient showing on an essential element of a claim in the case on which

22  the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

1   (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

2   could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

3   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

4   present specific, significant probative evidence, not simply "some metaphysical doubt").

5   Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

6   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

7   versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

8   *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

9         The determination of the existence of a material fact is often a close question. The

10  Court must consider the substantive evidentiary burden that the nonmoving party must

11  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

12  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

13  issues of controversy in favor of the nonmoving party only when the facts specifically

14  attested by that party contradict facts specifically attested by the moving party. The

15  nonmoving party may not merely state that it will discredit the moving party's evidence

16  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

17  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

18  nonspecific statements in affidavits are not sufficient, and missing facts will not be

19  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

20        However, if a nonmovant shows by affidavit or declaration that, for specified

21  reasons, it cannot present facts essential to justify its opposition, the court may defer

22  considering the motion, deny the motion, or allow time to obtain affidavits or

1  declarations or to take discovery. Fed. R. Civ. P. 56(d). The nonmovant must show that

2  "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further

3  discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose

4  summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,

5  525 F.3d 822, 827 (9th Cir. 2008). When confronted with a Rule 56(d) motion, the court

6  may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

7  declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ.

8  P. 56(d).

9           **2.      Motion for Rule 56(d) Continuance**

10          The Estate seeks a 90-day continuance so that it may conduct discovery regarding

11  Ohio's alleged bad faith. Dkt. 18. Specifically, the Estate seeks discovery on "any

12  communications made between the insurer and its insureds after the policy was issued,

13  any investigation and evaluation of the claims performed by the insurer, and what actions

14  the insurer took after receiving notice of the claim." *Id.* at 6.

15          While this discovery may be relevant to the Estate's counterclaims, it fails to meet

16  the requirements of Rule 56(d) to permit a continuance. In support of its motion, the

17  Estate provides the declaration of its counsel, but the declaration does not specify either

18  the facts it hopes to elicit from further discovery or how those facts are essential to

19  oppose Ohio's motion for summary judgment. *See* Dkt. 19. Rather, the declaration simply

20  attaches the Estate's first set of interrogatories and requests for production it propounded

21  on Ohio. *Id.*, Exs. 1, 2. While the Estate explains in its reply why the evidence is essential

22

1   to contest Ohio's motion for summary judgment, *see* Dkt. 22, that is not the standard.[3]

2   The Federal Rules of Civil Procedure require that the nonmovant show by "*affidavit or*

3   *declaration* that, for specified reasons, it cannot present facts essential to justify its

4   opposition[.]" Fed. R. Civ. P. 56(d) (emphasis added). "Failure to comply with these

5   requirements is a proper ground for denying discovery and proceeding to summary

6   judgment." *Family Home & Fin. Ctr.*, 525 F.3d at 827 (internal quotation omitted).

7          The Estate has failed to meet the requirements of Rule 56(d). Its motion for a Rule

8   56(d) continuance is, therefore, DENIED.

9          **3.      Motion for Summary Judgment**

10          "Interpretation of an insurance contract is a question of law[.]" *Woo v. Fireman's*

11   *Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007). Terms are to be interpreted as the "average

12   person purchasing insurance" would understand them. *Id*. While the insured has the

13   burden of proving that claims fall within a grant of coverage, the insurer has the burden

14   of proving that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas.*

15   *Co.*, 119 Wn.2d 724, 731 (1992) (en banc). The duty to defend is broader than the duty to

16   indemnify and arises "when a complaint against the insured, construed liberally, alleges

17   facts which could, if proven, impose liability upon the insured within the policy's

18   coverage." *Woo*, 161 Wn.2d at 52–53. Ambiguities are construed in favor of the

19   triggering the duty to defend. *Id*. at 53.

20

21          [3] The Court additionally notes that, "[a]s a general rule, a movant may not raise new facts
or arguments in [its] reply brief." *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d 1218,

22   1226 (W.D. Wash. 2014) (internal quotation and citation omitted).

1      In Washington, in a declaratory judgment action, the duty to defend is determined

2   by the facts alleged in the complaint. *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wn.2d

3   909, 911 (1969) (en banc). "Insurance companies are required to look beyond the

4   allegations of the complaint and reasonably investigate when the allegations are in

5   conflict with facts known to or readily ascertainable by the insurer, or if the allegations of

6   the complaint were ambiguous or inadequate." *Unigard Ins. Co. v. Leven*, 97 Wn. App.

7   417, 425 (1999). However, the insurer may rely on extrinsic facts learned through such

8   an investigation only to *trigger* the duty to defend, not deny it. *Grange Ins. Ass'n v.*

9   *Roberts*, 179 Wn. App. 739, 752 (2013) (internal citation omitted). "After obtaining a

10  declaration of noncoverage, an insurer will not be obligated to pay from that point

11  forward." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 885 (2013) (internal

12  quotations and emphasis omitted).

13      Ohio moves for summary judgment, arguing that it had no duty to defend because

14  the Auto Exclusion "clearly excludes coverage for the claims alleged in the Underlying

15  Action." Dkt. 14 at 11. It argues that the Auto Exclusion is clear and unambiguous and

16  precludes liability coverage. It seeks an order declaring that Ohio had no duty to defend

17  or indemnify Garage Plus, Danny, or Jeremy in the Underlying Action. *Id.* at 21. The

18  Estate's opposition repeats its request for discovery on its bad faith argument. Dkt. 23. It

19  additionally asserts that the Auto Exclusion is not indisputably applicable from the face

20  of the Underlying Action's Fourth Amended Complaint and the Policies because it is not

21  clearly established that the vehicle was rented or loaned to Garage Plus. Dkt. 23 at 2.

22

1    By the plain terms of Ohio Security Policy Exclusion 2.g, the Policy does not

2    apply when two conditions are met: (1) the injury at issue arises out of the ownership,

3    maintenance, use or entrustment to others of any "auto;" and (2) the "auto" is owned or

4    operated by or rented or loaned to any insured. Dkt. 1-1 at 60.

5           **a.     Ownership, Maintenance, Use or Entrustment of an Auto**

6    Ohio argues that, irrespective of which potential insured is alleged to be liable, it is

7    clear from the face of the Fourth Amended Complaint that the allegations arose out of the

8    ownership, use, or entrustment to others of the Chevrolet pickup. Dkt. 14 at 13–15. The

9    Fourth Amended Complaint asserts four theories of liability against the insureds at issue:

10   (1) that Jeremy was negligent in operating the pickup; (2) that Danny and Perdue were

11   vicariously liable for Jeremy's negligence under the family car doctrine; (3) that all

12   defendants in the Underlying Action (including Danny and Garage Plus) were jointly and

13   severally liable for Jeremy's negligence under the negligent entrustment doctrine; and (4)

14   that Garage Plus was vicariously liable for Jeremy's conduct. Dkt. 1-3 at 8–12. The Court

15   agrees that all four claims arise out of the ownership, use, or entrustment of the pickup

16   truck within the meaning the Auto Exclusion.[4]

17   First, the ordinary negligence claim against Jeremy arises out of the use of an auto

18   within the plain language of the exclusion. The Washington State Supreme Court has

19   held that, for an injury to "arise out of" vehicle use, "the facts must establish that the

20   accident involved some causal relationship between a condition of the vehicle, a

21   _____

22   [4] It is undisputed that the 1986 Chevrolet K-10 pickup truck qualifies as an "Auto" within the meaning of the Policies. *See* Dkt. 1-1 at 70.

1    permanent attachment thereto, or some aspect of its operation." *Kroeber v. GEICO Ins.*

2    *Co.*, 184 Wn.2d 925, 932 (2016) (en banc) (internal quotations omitted). The Fourth

3    Amended Complaint clearly alleges that Jeremy was operating the pickup truck when he

4    struck and hit Mrs. Rainwater, causing her injuries and ultimate death. *See* Dkt. 1-3,

5    ¶¶ 3.1–3.10.

6         Similarly, the Estate's vicarious liability claim against Garage Plus falls within the

7    exclusion. The Fourth Amended Complaint alleges that Garage Plus is liable because

8    Jeremy was "was an agent and within the scope of his employment and acting in

9    furtherance of Garage Plus' interest when he struck and killed Susan Rainwater . . . ." *Id.*

10   ¶ 9.2. Under the doctrines of vicarious liability and respondeat superior, Garage Plus

11   would be liable for Jeremy's conduct if his use of the auto can be attributed to it. *See,*

12   *e.g.*, *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48 (1997) ("Vicarious liability,

13   otherwise known as the doctrine of respondeat superior, imposes liability on an employer

14   for the torts of an employee who is acting on the employer's behalf."). The Fourth

15   Amended Complaint alleges as much, thus bringing this claim within the meaning of the

16   exclusion.

17        The remaining two claims—negligent entrustment and liability under the family

18   car doctrine—also fall within the Auto Exclusion because they contemplate entrustment.

19   "The general negligent entrustment rule for automobiles is that the owner of a vehicle is

20   liable for entrusting it to an intoxicated person." *Mortensen v. Moravec*, 1 Wn. App. 2d

21   608, 625 (2017) (internal citation omitted). Likewise, "[a]n automobile owner may incur

22   liability under the family car doctrine for injuries caused by a third person to whom a

1    family member has entrusted the car if the car was used for the pleasure and convenience

2    of a family member." *Cameron v. Downs*, 32 Wn. App. 875, 880 (1982). Although the

3    Ohio Security Policy does not define the term "entrustment," undefined terms are given

4    "their plain, ordinary, and popular meaning." *Int'l Marine Underwriters v. ABCD*

5    *Marine, LLC*, 179 Wn.2d 274, 284 (2013) (en banc) (internal quotation and citations

6    omitted). "Entrust" means "to commit to another with confidence."[5] The Court thus

7    agrees that neither Garage Plus nor Danny could be held liable for negligent entrustment

8    or under the family car doctrine without proof that they entrusted the pickup to Jeremy.

9    Consequently, these claims also "arise out of" the entrustment to others of any auto

10   within the meaning of the Auto Exclusion.

11            The claims asserted against Garage Plus, Danny, and Jeremy in the Fourth

12   Amended Complaint therefore fall within the Auto Exclusion because the allegations

13   arose out of the ownership, use, or entrustment to others of an auto.

14            **b.      Owned or Operated by or Rented or Loaned to Any Insured**

15            Ohio argues that it is additionally undisputed that the Chevrolet pickup was owned

16   or operated by or rented or loaned to any insured because the allegations in the Fourth

17   Amended Complaint assert that both Danny and Jeremy were insureds who owned and

18   operated the pickup, respectively, and that they loaned it to Garage Plus on the day of the

19   accident. Dkt. 14 at 15–19.

20

21
_____

22            [5] *Entrust*, Merriam-Webster, https://www.merriam-webster.com/dictionary/entrust (last visited Apr. 22, 2022).

1    The Court first notes that the Auto Exclusion uses the term "any insured." *See* Dkt.

2  1-1 at 60. Ohio argues that an exclusion for injury arising out of the use or entrustment to

3  others of an auto "owned or operated by or rented or loaned to *any* insured" excludes

4  coverage for all insureds, irrespective of which particular insured owned or operated or

5  rented or loaned the auto. Dkt. 14 at 16. The Estate argues, in brief and with no

6  supporting authority, that Ohio cannot show that the Fourth Amended Complaint clearly

7  established that the vehicle was rented or loaned to Garage Plus. Dkt. 23 at 2.

8    The Court agrees with Ohio on this issue. In *Caroff v. Farmers Insurance Co. of*

9  *Washington*, for example, the court held that an exclusion for injury arising out of child

10  molestation by any insured barred coverage for the insured parents of an alleged abuser

11  even though the parents did not themselves engage in an act of abuse. 155 Wn. App. 724,

12  729–30 (1999). Persuasively, other courts around the country have reached this same

13  conclusion in considering the term "any insured" specific to auto exclusions. *See, e.g.*, *BP*

14  *Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P3d 832, 839 (Okla. 2005) ("[T]he

15  term 'any insured' in an 'Auto Exclusion' clause of a commercial general liability policy

16  excludes from coverage all automotive occurrences attributable to any of the insureds.").

17  The term "any insured" in the Auto Exclusion encompasses the conduct of all insureds

18  and thus excludes coverage regardless of which insured engaged in the excluded conduct.

19  It is not a condition of the exclusion that only the insured was rented or loaned the auto.

20    With this in mind, it is clear and unambiguous from the face of the Fourth

21  Amended Complaint that the pickup truck was operated by any insured. The Fourth

22  Amended Complaint alleges that Jeremy was employed by Garage Plus and "was an

1   agent and within the scope of his employment and acting in furtherance of Garage Plus'

2   interest when he struck and killed Susan Rainwater . . . ." Dkt. 1-3, ¶ 9.2. As alleged,

3   Jeremy was an employee acting within the scope of his employment with Garage Plus

4   when operating the pickup truck, making him an insured and triggering the Auto

5   Exclusion. *See* Dkt. 1-1 at 66 (extending insured status to employees "for acts within the

6   scope of their employment by [the business] or while performing duties related to the

7   conduct of [the] business").

8        Ohio posits two additional arguments that the pickup truck was owned or operated

9   by or rented or loaned to any insured: (1) that Danny owned the pickup and qualified as

10  an insured as a member of Garage Plus and (2) that the pickup truck was loaned to

11  Garage Plus. Dkt. 14 at 17–19. But because the Court has concluded that the Auto

12  Exclusion was triggered by the fact that the Fourth Amended Complaint alleged that

13  Jeremy was an employee of the insured acting within the scope of his employment, it

14  need not address these alternative theories.

15       In sum, the Fourth Amended Complaint in the Underlying Action, which Garage

16  Plus tendered to Ohio for defense and indemnity, clearly and unambiguously triggered

17  the Auto Exclusion because (1) the injury at issue arose out of the ownership,

18  maintenance, use or entrustment to others of any "auto" and (2) the "auto" was operated

19  by any insured, i.e., Jeremy. Ohio's motion for summary judgment is, therefore,

20  GRANTED on the narrow issue of whether Ohio had a duty to defend or indemnify

21  Defendants Garage Plus, Danny Simon, or Jeremy Simon in the Underlying Action.

22

1   **C.      Remaining Issues**

2          While the Court has concluded that, as a matter of law, Ohio did not have a duty to

3   defend or indemnify Defendants Garage Plus, Danny Simon, or Jeremy Simon in the

4   Underlying Action, there are still issues and counterclaims to be resolved. Ohio's

5   proposed order on its motion for summary judgment seeks a declaratory judgment that it

6   correctly denied the claims for liability coverage, that it had no obligation to accept or

7   respond to the Estate's settlement offers, and that it did not breach its Policies with

8   Garage Plus. *See* Dkt. 14-1. As discussed above, Defendants have raised the issue of bad

9   faith, and "an insurer that, in bad faith, refuses or fails to defend is estopped from

10  denying coverage." *Vanport Homes*, 147 Wn.2d at 759.

11         The Court will not enter judgment and close the case until the counterclaim of bad

12  faith and coverage by estoppel are resolved. Accordingly, discovery should commence on

13  these issues, if it has not already begun, and Ohio's motion for a protective order that it

14  need not respond to the Estate's first set of interrogatories and requests for production is

15  DENIED as moot.

16                              **III.   ORDER**

17         Therefore, it is hereby **ORDERED** that Plaintiffs Ohio Casualty Insurance

18  Company and Ohio Security Insurance Company's motion for summary judgment, Dkt.

19  14, is **GRANTED**, that Plaintiffs' motions to strike and dismiss Defendants' affirmative

20  defenses, Dkts. 25, 46, are **GRANTED in part and DENIED in part**, and that

21  Plaintiffs' motion for protective order, Dkt. 30, is **DENIED as moot**.

22  \\

1          It is hereby further **ORDERED** that Defendant Alan Rainwater's Rule 56(d)

2   motion to continue, Dkt. 18, is **DENIED** and that Defendants shall file their amended

3   Answers within fourteen days of this Order.

4          Dated this 25th day of April, 2022.

5

6                                     _____

7                               BENJAMIN H. SETTLE
                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 20