UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OHIO SECURITY INSURANCE COMPANY, et al.,

    Plaintiffs,

v.

GARAGE PLUS STORAGE AVIATION LLC, et al.,

    Defendants.

CASE NO. 3:21-cv-05579-BHS

ORDER

THIS MATTER is before the Court on Plaintiffs Ohio Security Insurance Co.'s and The Ohio Casualty Insurance Co.'s (together "Ohio") Motion to Dismiss Defendant Alan Rainwater's Amended "bad faith" Counterclaim against them. Dkt. 54.

**I. BACKGROUND**

Ohio's Complaint, Dkt. 1, sought a determination that its insurance policies did not provide coverage for Rainwater's claims against the defendants (together "Garage

Plus," for ease of reference) in the underlying wrongful death[1] case, and that Ohio therefore had no duty to defend Garage Plus in that action.

Rainwater[2] initially asserted his bad faith claim as an affirmative defense to Ohio's Declaratory Judgment action. *See* Dkt. 17 at 7. Ohio sought summary judgment on its declaratory judgment claim, arguing that its Comprehensive General Liability policy expressly excluded coverage for injuries arising out of the use of vehicles, and that it therefore had no duty to defend Garage Plus against Rainwater's underlying wrongful death claim. Dkt. 14 at 11–15.

Ohio also sought to strike and dismiss Rainwater's bad faith affirmative defense under Federal Rules of Civil Procedure 12(f) and 12(b)(6), arguing that bad faith is a claim for relief, not an affirmative defense, and that proof of bad faith or any remedy associated with that tort, including coverage by estoppel, would not defeat Ohio's claim for declaratory relief. Dkt. 46 at 2.

The Court granted Ohio's motion for summary judgment, holding that its policy did not provide coverage for Rainwater's claims against Garage Plus, and that it therefore had no duty to defend or indemnify Garage Plus in the underlying action, as a matter of law. Dkt. 50 at 19. It also agreed that Rainwater's bad faith assertions were not affirmative defenses but were properly construed as counterclaims. *Id*. at 9. It permitted

---

[1] The Court outlined the facts of the automobile/bicycle accident that killed Susan Rainwater in its prior Order, Dkt. 50. They need not be repeated here.

[2] Rainwater obtained a consent judgment for $12 million against Ohio's insured, Garage Plus, and agreed to execute that judgment against only Ohio, in exchange for an assignment of Garage Plus's rights against Ohio. That settlement resolved Rainwater's underlying, state court wrongful death claim.

ORDER - 2

1  Rainwater to re-assert his bad faith claims as counterclaims, *id*., and permitted him to
2  conduct discovery into those claims, *id*. at 19.

3  Rainwater filed an amended answer and counterclaim, asserting that Ohio had
4  handled Garage Plus's insurance claim for defense and indemnity in bad faith. Dkt. 52.
5  This claim has two primary components. First, Rainwater alleges, Ohio failed to
6  investigate the claim and denied Garage Plus's tender only six days after it was made.

7  Second, three months after it denied coverage, and days before the scheduled
8  mediation in the underlying lawsuit, Ohio "work[ed] in concert" with another defendant's
9  (Mountain Crest Homes) insurer (Nautilus) to convince Defendant Simon (Garage Plus's
10 owner) to cancel the mediation for the benefit of one or both insurers. *Id*. at 8. When that
11 effort failed, Rainwater alleges, Nautilus contacted Rainwater's counsel and asked that
12 Rainwater (the plaintiff in that suit) cancel or delay the mediation because it would not be
13 "fair" if Ohio did not participate. *Id*. at 9. Rainwater refused, and the mediation took
14 place. Nautilus participated, Ohio did not, and the mediation was not successful.
15 Rainwater and Garage Plus then settled, in the form of a consent judgment, a covenant
16 not to execute, and an assignment to Rainwater of Garage Plus's rights against Ohio. *Id*.

17 Ohio now asks the Court to dismiss Rainwater's bad faith counterclaims, arguing
18 they are not plausible and are not supported by any additional factual allegations, even
19 though Rainwater now has all the documents related to Ohio's handling of Garage Plus's
20 claim. Dkt. 54 at 2–5. It argues that its prompt coverage determination was not only
21 reasonable, but was correct, as the Court's prior Order confirmed. Ohio also argues that
22 its (or rather *Nautilus's*) alleged effort to delay the mediation occurred after Ohio had

1 | denied coverage, that the effort was not successful, and that Rainwater has not explained
2 | how a delay would have benefited Ohio or harmed its insured. *Id.*

3 |     Rainwater responds that an insurer may be liable for bad faith when it mishandles
4 | a claim in *any* manner, regardless of its ultimate coverage determination, and that Ohio
5 | (with Nautilus) put its own interests above those of its insured, Garage Plus. He argues
6 | that where there is bad faith, there is a presumption of harm, and that here Ohio's bad
7 | faith forced Garage Plus to enter into the consent judgment agreement. Dkt. 55 at 2–3.
8 |     The issues are addressed in turn.

## II.  DISCUSSION

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *id.* at 555.).

**A.     Rainwater has not plausibly alleged that Ohio investigated Garage Plus's tender in bad faith.**

Rainwater asserts that Ohio failed to reasonably investigate Garage Plus's claim for coverage and a defense of the underlying lawsuit before it denied coverage just six days after it received Garage Plus's tender. Dkt. 52 at 8–9. He alleges the failure violated various claims handling regulations and damaged Garage Plus.

Ohio argues that while a bad faith claim can theoretically exist in the absence of coverage, such claims are limited to the situation where the insurer mishandles the claim in some way, such as by failing to conduct a reasonable investigation. Dkt. 54 at 9. It concedes that Washington law requires it to fulfill its contractual and statutory obligation to investigate the claim "fully and fairly." *Id.* (citing *Coventry Assoc. v. Am. States Ins. Co.*, 136 Wn.2d 269, 279 (1998)) ("[W]here the insurer correctly denied coverage, complying with its duty of good faith 'creates no insurmountable burden.'").

Ohio argues that Rainwater's complaint includes no factual support for his conclusory claim that its investigation was unreasonable, and that he does not plausibly articulate why the investigation's length—six days—was inadequate or unreasonable. It argues persuasively that the coverage determination was made readily from the "four corners" of Rainwater's underlying complaint, which alleged that Jeremy Simon

ORDER - 5

negligently struck and killed Susan Rainwater with his truck. The policy at issue excluded coverage from claims arising out of the ownership, maintenance, use, or entrustment of any automobile, and Ohio correctly determined that its policy did not provide coverage for the claims asserted against Garage Plus in the underlying wrongful death lawsuit. *See* Dkt. 1-4 (coverage denial). It argues that in the face of an unambiguous complaint, and a clear exclusion, it did not have a duty to investigate further, or consider extrinsic evidence, in making its coverage determination. *Id*. at 10 (citing *Absher Constr. Co. v. N. Pac. Ins. Co.*, 861 F. Supp. 2d 1236, 1252 (W.D. Wash. 2012) (insurer was not obligated to consider extrinsic evidence because the allegations in the underlying complaint "were neither ambiguous nor inadequate with respect to [the insurer's] duty to defend").

Rainwater's response to the motion, Dkt. 55, focuses on the mediation, discussed below. On this "investigation" claim, the Response repeats that Ohio's coverage denial came only six days after Garage Plus tendered the defense of his wrongful death claim, but Rainwater does not articulate how that time frame was unreasonable, or what Ohio was required to do additionally or instead.

To state a claim for bad faith, Rainwater is obligated to plausibly allege that Ohio engaged in conduct that was unreasonable, frivolous, or unfounded. *See Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998). His claim that Ohio's investigation of his underlying wrongful death claim was unreasonable or otherwise lacking is not plausible. The policy did not provide coverage under the clear allegations of the complaint and the clear terms of the policy. *See* Dkt. 50.

Ohio's motion to dismiss Rainwater's bad faith investigation claim is GRANTED, and that claim is DISMISSED.

**B.     Rainwater has not plausibly alleged that Ohio's conduct surrounding the failed mediation amounts to bad faith.**

Rainwater also alleges that Ohio acted in bad faith when it "work[ed] in concert" with Nautilus in an unsuccessful effort to delay the mediation in the underlying action. Dkt. 52 at 8.

Ohio argues that this claim does not plausibly allege that Ohio acted unreasonably. First, it argues, the alleged effort to delay the mediation came more than three months after Ohio had formally denied coverage. Ohio argues that where, as here, it correctly denied coverage, its duty of good faith extends only to its obligation to act reasonably in response to a claim or tender of defense. Dkt. 54 at 10 (citing *St. Paul Fire & Marine Ins. Co. v. Onvia*, 165 Wn.2d 122, 131–32 (2008)). Accordingly, it argues, the only facts that could support a bad faith claim must relate to its investigation of the claim, before it denied coverage. *Id.* (citing *Coventry*, 136 Wn.2d at 279 ("We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist.")). Ohio argues that Rainwater's factual allegations about the mediation do not relate to its investigation of Garage Plus's claim or tender of defense; that tender had already been correctly denied. In other words, it argues, the alleged unsuccessful attempt to delay the mediation could not have had any impact on Ohio's investigation (which was long over) and could not have prejudiced its insured,

Garage Plus. Ohio also argues that Rainwater's claim suggests at most that *Nautilus* wanted to delay the mediation, because it would not be fair (to Nautilus) if the mediation proceeded without the other insurer, Ohio. Ohio argues that Rainwater has not plausibly alleged (and cannot plausibly allege) that Ohio would benefit by delaying the mediation it was already not going to attend, or by declining to contribute funds to settle a claim it had already denied.

Rainwater's Response, Dkt. 55, again asserts that the insurers agreed to work in concert to delay the attempt to globally resolve the wrongful death action, for the benefit of the insurers. He reiterates that the express purpose of the attempt was to "delay a settlement where only one insurer, rather than both, contributed toward a settlement." *Id*. at 4. He argues correctly that an insurer's duty of good faith applies to all insurance matters, including investigation and settlement of claims. *Id*. at 6–7 (citing RCW 48.01.030 and WAC 284-30-330 and -370). But this duty cannot be read to impose on Ohio an obligation to attend a mediation in a case it had expressly declined to defend or to contribute to any settlement where it had no duty to indemnify its insured, and informed its insured that it would not do so.

Rainwater also argues that the effort to delay the mediation was at bottom an effort to delay a *settlement*, because Ohio "did not intend to contribute any money toward a settlement." *Id*. at 8. He also asserts that Ohio's self-interest in delaying the mediation was its goal to pay "a lesser amount toward a global settlement if the other insurer, Nautilus, also contributed." *Id*.

But Ohio had already declined to defend or indemnify Garage Plus; it had already (correctly) denied coverage altogether. As Ohio points out, it could not have been colluding with Nautilus to pay less than the zero it had already stated it would pay. Rainwater's allegations perhaps suggest why Nautilus felt it was unfair to mediate without Ohio's participation, or why Nautilus intended to pay less if Ohio was not contributing, but it does not plausibly support the allegation that *Ohio* acted to put its own interests ahead of its insured's.

Rainwater has not explained and, in the Court's view, cannot explain how Ohio's "agreement" to seek to delay the mediation was of any benefit to it. Nor has he explained how Ohio's unsuccessful effort to delay or derail a settlement funded by Nautilus (but not by Ohio) prejudiced Garage Plus. Rainwater's mediation conduct bad faith claim is not plausible.

Ohio's motion to dismiss that claim is GRANTED, and it is DISMISSED.

**C.    Further Amendment would be futile.**

Rainwater's Response asks for leave to amend if the Court determines that his bad faith claims as pled are not plausible. Dkt. 55 at 10. On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

Rainwater has asserted his claims as affirmative defenses and as counterclaims, and has yet to identify or allege any facts supporting his claim that Ohio failed to investigate Garage Plus's claim for insurance coverage, or explain what extrinsic or other evidence it should have considered before denying the tender. Nor has he articulated how Ohio put its own interests above its insureds by "colluding" with Nautilus to delay the mediation, or how that effort prejudiced Garage Plus. For the reasons explained above (and in the Court's prior order on coverage, Dkt. 50), Rainwater cannot plausibly do so, and any further attempt to amend his bad faith claims would be futile.

Ohio's Motion to Dismiss Rainwater's bad faith counterclaims is GRANTED, and those claims are DISMISSED with prejudice and without leave to amend.

The Clerk shall enter a JUDGMENT and close the case.

IT IS SO ORDERED.

Dated this 27th day of September, 2022.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge